UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JILL CLARK, on behalf of herself and others similarly situated,** | |
| **Plaintiff,** | Civil Action No.: 2:20-cv-12969-WJM-MF |
| v. | |
| **SAMSUNG ELECTRONICS AMERICA, INC.,** | **OPINION** |
| **Defendant.** | |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Jill Clark ("Plaintiff") brings this putative class action against Defendant Samsung Electronics America, Inc. ("Defendant"). This case was originally filed in the United States District Court for the Central District of California (the "California District Court") in a case currently captioned *Baclija v. Samsung Electronics America, Inc.*, Case No. 5:16-CV-01953-DMG-KK as part of a broader putative class action, and, pursuant to that court's order, was subsequently transferred to this Court. ECF No. 115. Plaintiff alleges, among other things, that through marketing campaigns related to certain of its cellular telephone products, Defendant violated both the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1, *et seq.* and the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301-2312, and is further liable for common law fraud and unjust enrichment. This matter comes before the Court on Defendant's motion to dismiss the Second Amended Complaint (the "Motion"). ECF No.139. For the reasons set forth below, the Motion is **GRANTED**.

## I.    BACKGROUND

### A. Factual Background[1]

Defendant is a manufacturer of electronic products incorporated under the laws of New York with a principal place of business in New Jersey. SAC ¶ 6; McBeth Decl. ¶ 2, ECF No. 76. Beginning in 2016, Defendant began selling its popular "Galaxy S7" series of cellphones.[2] SAC ¶ 14. As part of its marketing efforts to promote sales of the Galaxy

---

[1] Unless otherwise indicated, all facts in this section are taken from the Second Amended Complaint (the "SAC"), ECF No. 79-1.

[2] The Galaxy S7 series actually consists of three separate devices: the Galaxy S7, the Galaxy S7 Edge, and the Galaxy S7 Active. The SAC does not differentiate between these products, and

S7, Defendant engaged in a national advertising campaign highlighting the Galaxy S7's features, including its ability to resist water damage in up to five (5) feet of water for up to thirty (30) minutes. *Id.* ¶ 18. Among these advertisements were television commercials featuring people pouring champagne onto a Galaxy S7, dunking a Galaxy S7 in, or spraying a Galaxy S7 with, water, and using a Galaxy S7 while engaged in water-based sporting activities such as snorkeling, kayaking, and surfing. *Id.* ¶ 19. Defendant's website also prominently featured the Galaxy S7 and stated that the phones were water-resistant. *Id.* ¶ 20.

On or about December 27, 2017, after seeing advertisements and promotional materials describing its water resistance, Plaintiff purchased a Galaxy S7 from a third-party electronics retailer. *Id.* ¶¶ 32-33. Plaintiff alleges that she would not have purchased a Galaxy S7 but-for the phone's water-resistant features and Defendant's representations with respect thereto. *Id.* ¶¶ 33-34. Upon purchasing her Galaxy S7, Plaintiff alleges the phone was not as water resistant as Defendant advertised, and that it would begin "acting strange" whenever it was exposed to water. *Id.* ¶ 35. For example, Plaintiff alleges that the phone would go "'haywire,' with a flashing and jumping screen," whenever Plaintiff used her phone while her hand was wet, and that if a single drop of water were on the phone's screen, she would have to shut the phone off completely "dry it off, wait, and restart it." *Id.* Plaintiff contacted Defendant by phone and complained about these issues but alleges that Defendant did not address her concerns, did not follow up on her complaints, and refused to provide in-warranty repairs or offer replacement devices. *Id.* ¶¶ 36-37.

Plaintiff further alleges that the structural design of the Galaxy S7 itself suggests that, despite its advertisements to the contrary, Defendant knowingly manufactured the Galaxy S7 to not be water-resistant. *Id.* ¶ 38. Specifically, Plaintiff alleges that the internal components of a Galaxy S7 feature white moisture-detecting stickers that turn a pinkish color upon exposure to any moisture or liquid. *Id.* Plaintiff claims that these stickers do not contribute to the Galaxy S7's functionality but are merely indicators to repair technicians that the device was exposed to moisture or liquid. *Id.* ¶ 39. In addition, Plaintiff alleges that the Galaxy S7's circuit board is not protected by a "water-repellant coating" and that the "gaskets and seals adjoining the [Galaxy S7's] enclosure deteriorate with ordinary usage" rendering the enclosure "incapable of protecting the circuit board from damage caused by direct exposure to saltwater or jets of water." *Id.* ¶ 40.

### B. Procedural History

This case has a long and complicated procedural history. As such, the Court will briefly recount the posture of this case only to the extent necessary for the resolution of the instant Motion.

On September 9, 2016, this putative class action was commenced by the filing of a complaint in the United States District Court for the Central District of California. The

---

unless otherwise specified, this Opinion refers to these devices collectively as the "Galaxy S7."

Complaint, and the subsequently filed First Amended Complaint, sought to pursue claims on behalf of both a nationwide class and California subclass of individuals who purchased Galaxy S7 devices. However, after several motions to dismiss and to compel arbitration, Defendant consented to the filing of the Second Amended Complaint pursuant to a stipulation with the then-named plaintiffs Dulce Alondra Velasquez-Reyes and Ken Shalley (the "Stipulation"), ECF No. 79, which was approved and entered by the California District Court on May 18, 2020. ECF No. 82. The Stipulation provided, among other things, for the filing of the Second Amended Complaint on the conditions that the plaintiffs remove their nationwide class allegations and would not seek leave to further amend the Complaint. Stipulation at 3.

Following entry of the Stipulation, the plaintiffs filed the SAC. The SAC removed the nationwide class allegations, removed Ken Shalley as a named plaintiff, and added two new named plaintiffs, Martin Baclija and the Plaintiff in this action, Jill Clark.[3] Along with the addition of Clark as a named plaintiff, the SAC sought to pursue claims on behalf of two putative classes: (1) a class comprised of individuals who purchased Galaxy S7 devices in California; and (2) a class comprised of individuals who purchased Galaxy S7 devices in New Jersey. Following Defendant's motion to dismiss the SAC, and Plaintiff's unopposed cross motion to transfer venue, the claims of the putative New Jersey class, lead by Plaintiff as named representative, were severed from the California action and transferred to this Court. Before the Court now is Defendant's motion to dismiss the SAC.

## II.     LEGAL STANDARD

### A. Dismissal for Lack of Subject Matter Jurisdiction

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure ("FRCP"), a case may be dismissed "for lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Where, as here, the Court's subject matter jurisdiction is challenged, the party invoking the Court's jurisdiction, here Plaintiff, bears the burden of persuasion. *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007). A challenge to the Court's subject matter jurisdiction may be either "facial" or "factual." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action¸* 678 F.3d 235, 243 (3d Cir. 2012) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). A facial attack is one that challenges the legal sufficiency of the pleadings and asserts that, on its face, a given claim cannot invoke the subject matter jurisdiction of the Court because some jurisdictional defect is present, such as the absence of a federal question or any indication of a diversity of citizenship between the parties. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). In considering a facial attack on its jurisdiction, a Court applies the same standard of review as a typical motion to dismiss brought under FRCP 12(b)(6): it "must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the

---

[3] Shortly after the filing of the Second Amended Complaint, the parties agreed to the stipulated dismissal of Velasquez-Reyes, leaving only Baclija and Clark as the named plaintiffs in the case. ECF No. 97.

3

light most favorable to the plaintiff." *Schering Plough*, 678 F.3d at 243 (quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)). Assuming such allegations to be true, the Court must determine whether Plaintiff has alleged a plausible basis for the Court's jurisdiction. *See Schuchardt v. President of the United States*, 839 F.3d 336, 344 (3d Cir. 2016) (noting that in facial challenge to jurisdiction based on lack of standing under FRCP 12(b)(1), plaintiff must "allege facts that affirmatively and plausibly suggest that [he] has standing to sue").

A factual attack on the Court's jurisdiction, however, is one based on the specific jurisdictional facts of the case. In other words, a "factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites." *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008) (alterations in original). In making a factual attack on the Court's subject matter jurisdiction, a defendant can submit proof that jurisdiction does not in fact exist, even though it may have been properly pleaded by the plaintiff in their complaint. *Aichele*, 77 F.3d at 358. As such, in considering a factual attack on its jurisdiction, the Court is not limited to the pleadings, and may weigh and consider outside evidence for itself to determine whether subject matter jurisdiction exists. *Gould Elecs., Inc. v. United States*¸220 F,3d 169, 176-77 (3d Cir. 2000). Importantly, unlike a facial attack, no presumption of truthfulness attaches to the plaintiff's allegations of jurisdictional facts in a factual attack. *CNA*, 535 F.3d at 139.

### B. Dismissal for Failure to State a Claim

FRCP 12(b)(6) provides for the dismissal of a complaint if the plaintiff fails to state a claim upon which relief can be granted.  The movant bears the burden of showing that no claim has been stated.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).  In deciding a motion to dismiss under FRCP 12(b)(6), "all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom."  *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The court need not accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## III. DISCUSSION

Defendant moves to dismiss each of the counts asserted against it in the Second Amended Complaint on two separate grounds: (1) the Court lacks subject matter jurisdiction to hear the claims; and (2) Plaintiffs have failed to sufficiently state a claim upon which relief can be granted. The Court will address each ground for dismissal in turn.

4

### A. Dismissal for Lack of Subject Matter Jurisdiction

The Court's jurisdiction in this case is premised on the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). Under CAFA, federal district courts have original jurisdiction over class actions raising state law claims where: "(1) the amount in controversy exceeds $5,000,000, as aggregated across all individual claims; (2) any member of a class of plaintiffs is a citizen of a state different from any defendant; and (3) the class has at least 100 members." *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 500 (3d Cir. 2014) (citing § 1332(d)(2), (5)(B), (6)). Defendant argues that Plaintiff has failed to meet her burden that the jurisdictional prerequisites with respect to minimum diversity and the amount-in-controversy under CAFA have been met. Plaintiff responds that the allegations in the Complaint, as well as the evidence submitted with her opposition brief, are sufficient to establish CAFA jurisdiction. The Court agrees with Defendant.

#### 1. Defendant Raises a Facial Challenge to Jurisdiction

In resolving a challenge to its subject matter jurisdiction over any claim, the Court must first determine whether the party challenging jurisdiction raises a "facial" or a "factual" attack "because that distinction determines how the pleadings must be reviewed." *Schering Plough*, 678 F.3d at 243. Here, there appears to be some disagreement or confusion over the nature of Defendant's jurisdictional challenge in this case and the governing standard. Defendant argues that Plaintiff has failed to sufficiently plead the necessary elements for jurisdiction under CAFA in the SAC and has further failed to show, by a preponderance of the evidence, that CAFA jurisdiction exists. In essence, Defendant appears to be making both a facial attack on the sufficiency of the SAC as well as a factual attack on jurisdiction. Plaintiff, meanwhile, argues that at this stage of the litigation, Defendant may only properly raise a facial attack, not a factual attack, and that, under any standard, jurisdiction exists in this case.

Though stylized as both a facial and factual challenge to the Court's jurisdiction, the Court finds that Defendant has raised a purely facial challenge to CAFA jurisdiction. Rather than raise any particular factual disputes, Defendant's arguments rest almost entirely on the sufficiency of Plaintiff's allegations in the SAC. *Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F. Supp. 3d 449, 458 (D.N.J. 2020); *see, e.g.*, Mot. at 9-13 (arguing that Plaintiff has not alleged any facts that support CAFA jurisdiction); Reply at 7 n.6 ("Clark's SAC failed to allege any facts showing jurisdiction, leaving Samsung with no specific facts to contest."). Moreover, Defendant has not filed any answer to the SAC or controverted any of the factual allegations therein. *Aichele*, 757 F.3d at 358.[4]

---

[4] Defendant suggests that its prior answer to the original complaint suffices for purposes of bringing a factual attack to jurisdiction. The Court disagrees. First, Defendant's prior answer did not relate at all to the New Jersey-based allegations raised by Plaintiff, who was not yet a party to the action. Second, as noted above, the clear thrust of Defendant's argument focuses on the sufficiency of Plaintiff's allegations, which, by definition, is a facial attack on jurisdiction.

5

Accordingly, the Court concludes Defendant's challenge must be reviewed as a facial attack.

### 2. Plaintiff Has Failed to Plausibly Allege CAFA Jurisdiction

As noted above, in a facial attack on its subject matter jurisdiction, the Court must *only* consider the allegations in the SAC and any documents referenced therein or attached thereto. *Schering Plough*, 678 F.3d at 243. The Court is not permitted to look beyond the pleadings at this stage and weigh the evidence for itself.[5] *See Schuchardt*, 839 F.3d at 343; *see also Donovan v. Public Policy Ctr. of N.J.*, No. 05-1181 (MLC), 2006 WL 1373230, at *3 (D.N.J. May 17, 2006). In evaluating the sufficiency of the jurisdictional allegations in the SAC, the Court applies the same standard as in a motion to dismiss under FRCP 12(b)(6): the Court assumes the well-pleaded factual allegations in the SAC, viewed in the light most favorable to Plaintiff, to be true and asks whether such allegations establish a plausible basis for invoking the Court's jurisdiction under CAFA. *Schuchardt*, 839 F.3d at 343. In so doing, the Court need not consider "mere conclusory statements," and "speculative or conjectural assertions" will not suffice. *Finkelman v. Nat'l Football League*, 810 F.3d 187, 194 (3d Cir. 2016). Accordingly, the Court considers whether the SAC plausibly alleges each of the three necessary elements for jurisdiction under CAFA.

#### i. Numerosity

CAFA only confers jurisdiction over class actions in which there are at least one hundred (100) class members. The SAC alleges that the "Classes consist of thousands of consumers who purchased [Galaxy] S7 phones." SAC ¶ 44. Though not explicit, a reasonable inference from this allegation is that there are at least one hundred (100) members of the putative New Jersey class. *See Allen v. Quicken Loans, Inc.*, No. 17-12352 (ES) (MAH), 2018 WL 5874088, at *12 (D.N.J. Nov. 9, 2018).

#### ii. Minimal Diversity

In addition to the one hundred-class member numerosity requirement, CAFA requires that at least one such class member be diverse from the defendant. 28 U.S.C. § 1332(d)(2). Here, Defendant argues that the SAC fails to sufficiently allege minimal diversity because it does not identify or specifically allege the existence of any diverse party. Mot. at 9. Plaintiff responds by (1) pointing to her definition of the proposed New Jersey class as those who "purchased Galaxy S7 phones in," rather than those who are "citizens of," New Jersey; and (2) asking the Court to "infer" from this definition and U.S. census data that at least one person purchased a phone in New Jersey but, by the time the SAC was filed, was a citizen of another state. Opp. at 13-17.

The Court agrees with Defendant and finds that Plaintiff has not adequately alleged minimal diversity. The "inferences" Plaintiff asks the Court to draw are not logical

---

[5] Thus, the Court will not consider the declarations and evidence submitted in connection with Plaintiff's opposition to the Motion.

inferences derived from well-pleaded factual allegations in the SAC but are rather assumptions and speculations needed to fill the gaps therein. However likely it is that a member of the putative New Jersey class was a citizen of another state at the time the SAC was filed, such an allegation is simply not in the SAC and the Court will not premise its own jurisdiction on such assumptions. That is not to say that Plaintiff was required to trace the citizenship of every putative class member and specifically identify one diverse party. But Plaintiff was required to plead the existence of one such diverse class member. That Plaintiff failed to do.[6]

### iii.     Amount-in-Controversy Requirement

With respect to the amount-in-controversy requirement, the SAC is devoid of any specific allegations that would entitle the putative New Jersey class to the requisite $5,000,000 in damages. At no point in the SAC does Plaintiff attempt to quantify either her own damages or those of any putative class members by, for example, pleading the purchase price of Galaxy S7 devices, repair costs for water damage, or market prices for non-water-resistant phones. The sole reference in the SAC to the potential damages of the New Jersey class occurs in the context of a "threadbare recital" of the elements of CAFA jurisdiction. *See* SAC ¶ 11 ("[T]he combined claims of class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs . . . ."). This assertion is no more than a mere conclusory statement that "is insufficient to establish subject matter jurisdiction without accompanying allegations of the underlying jurisdictional facts." *Sunshine v. Reassure Am. Life Ins. Co.*, No. 10-01030, 2011 WL 666054, at *2 (E.D. Pa. Feb. 22, 2011); *see also Allen*, 2018 WL 5874088, at *12. Moreover, even if this assertion were sufficient, the SAC purports to assert claims on behalf of two distinct classes – a class of California purchasers as well as a class of New Jersey purchasers – yet does not differentiate between the claims of these separate classes (which are now being litigated in two different fora) for purposes of establishing jurisdiction. As such, even crediting Plaintiff's assertion that the combined claims of "class members" exceeds the $5,000,000 threshold, the Court is left with no basis to conclude or infer that the combined claims of members of the putative *New Jersey* class alone exceed that amount.

Plaintiff points to the $569.99 price of a Galaxy S7 device advertised on Defendant's web site, which is cited in the SAC for its references to the Galaxy S7's water-resistant features, as support for her argument that "thousands of phones multiplied by all

---

[6] Plaintiff's reliance on *Gallagher v. Johnson & Johnson Consumer Cos.*, 169 F. Supp. 3d 598 (D.N.J. 2016) for the proposition that the proposed definition of a putative class can resolve questions of minimal diversity in CAFA actions is misplaced. That case concerned the inverse situation as presented here: jurisdiction in federal district court under CAFA was challenged *because* a plaintiff had specifically limited the putative class to people who were citizens of a particular state. *Id.* at 603-04. The court did not conclude that the inverse was also true – that a plaintiff who defines a putative consumer class by "purchasers" rather than "citizens" is entitled to an assumption that the class includes citizens of different states.

7

or most of the $500+ purchase price" satisfies the amount in controversy requirement. This price, however, is insufficient on its own to plausibly suggest that the aggregate value of the claims of putative New Jersey class members exceeds $5,000,000. Plaintiff does not allege that either she or any putative class members actually paid this price, or any other, for their Galaxy S7 device, and, even assuming all such putative class members did pay $569.99 for their Galaxy S7, Plaintiff has not alleged any plausible basis for further assuming that "all or most" of that purchase price should be included in calculating the amount-in-controversy or that "thousands of phones" were indeed purchased by members of the putative New Jersey class (as opposed to the California putative class). These allegations are simply not in the SAC. Thus, the SAC does not provide the Court with any way to estimate the value of the claims of members of the putative New Jersey class.

Accordingly, the Court concludes that Plaintiff has not sufficiently alleged a plausible basis for invoking the Court's jurisdiction under CAFA.

### B.    Dismissal for Failure to State a Claim

Because the Court has determined that Plaintiff has not alleged facts sufficient to invoke this Court's jurisdiction under CAFA such that dismissal is warranted under FRCP 12(b)(1), it does not address whether dismissal of any of the claims in the SAC is also warranted for failure to state a claim upon which relief can be granted under FRCP 12(b)(6). *See Steel Co. v. Citizens for a Better Env't¸* 523 U.S. 83, 93 (1998).

### C.    Leave to Amend

Perhaps the most significant issue in this case is whether Plaintiff ought to be allowed to seek further amendment of the SAC to correct the jurisdictional deficiencies identified above. Ordinarily, the Court would conclude that such amendment would be appropriate in this case because it seems likely that Plaintiff could properly allege sufficient facts to invoke the Court's subject matter jurisdiction under CAFA. Complicating the matter, however, is the existence of the Stipulation between Defendant and the prior named plaintiffs entered into while this action was still pending before the California District Court. Defendant argues that the Stipulation should bind Plaintiff because it was necessary to secure the consent of Defendant to allow Plaintiff, and thus the New Jersey purchaser class allegations, to be added to the litigation in the first place. Plaintiff responds that she was not a party to the litigation at the time the Stipulation was entered into, did not sign the Stipulation, and that the order entered by the California District Court approving the Stipulation does not bind or otherwise limit the "broad inherent powers" of this Court to control its own docket and permit amendment of the SAC. The Court again agrees with Defendant.

#### 1.    Plaintiff is Bound by the Terms of the Stipulation

Although Plaintiff herself was not a signatory to the Stipulation, she was a clear, intended beneficiary thereof and should be bound thereby. "A consensual stipulation of the parties is 'to be interpreted according to the general principles of contract construction.'" *USX Corp. v. Penn Cent. Corp.*, 130 F.3d 562, 566 (3d Cir. 1997) (quoting *Pittsburgh*

*Terminal Corp. v. Balt. & Ohio R.R. Co.*, 834 F.2d 249, 254 (3d Cir. 1987)). A third party may be treated as a third-party beneficiary of a contract where "the contracting parties intended that a third party should receive a benefit which might be enforced in the courts." *Atlas Commc'ns Tech., Inc. v. DXC Tech. Servs., LLC*, No. 3:19-cv-19033-BRM-DEA, 2020 WL 5105197, at *3 (D.N.J. Aug. 31, 2020) (quotations omitted).

Here, it is clear that the Stipulation conferred a benefit on Plaintiff, enforced by the California District Court's order approving the Stipulation, which allowed her to join this action and bring new claims on behalf of herself and the putative New Jersey class. The Stipulation mentions in both the introduction and the Recitals that the parties stipulated and agreed to allow the then-named plaintiffs to file the SAC to, among other things, specifically add Plaintiff as a party. Stipulation at 2-3. Moreover, Plaintiff is represented by the same counsel as had represented the then-named plaintiffs in the California District Court and who negotiated the terms of the Stipulation allowing Plaintiff to be added as a party. In other words, Plaintiff is not simply late to the party such that it would be unduly prejudicial or unfair to bind her to the terms of the Stipulation. Rather, her participation was anticipated by, and a direct result of, the terms of the Stipulation which were negotiated by her own attorneys and approved by the California District Court. Accordingly, Plaintiff was an intended beneficiary of the Stipulation and ought to be to bound thereby.

## 2.   There is No Basis for the Court to Set Aside the Stipulation

Having determined that Plaintiff is bound by the terms of the Stipulation, the Court must next decide whether to set aside the terms of the Stipulation to permit Plaintiff to seek leave to amend the SAC. In the context of stipulations to facts prior to trials, the Third Circuit has held that stipulations entered into by the parties should not be set aside or modified unless enforcing the stipulation would result in "manifest injustice." *Waldorf v. Shuta*, 142 F.3d 601, 618 (3d Cir. 1998). In determining whether there would be such manifest injustice, the Third Circuit considered "(1) the effect of the stipulation on the party seeking to withdraw the stipulation; (2) the effect on the other parties to the litigation; (3) the occurrence of intervening events since the parties agreed to the Stipulation; and (4) whether evidence contrary to the stipulation is substantial." *Id.* at 617-18. Though not precisely analogous to the Stipulation at issue in this case, the Court finds the Third Circuit's reasoning helpful.

Here, Plaintiff has not shown that enforcing the Stipulation's prohibition against further amendments to the SAC would result in "manifest injustice" such that she should be free from its terms. First, as noted above, Plaintiff's participation in this case is itself a direct consequence of the Stipulation. That the Stipulation may require dismissal rather than amendment of the SAC does not change the fact that Plaintiff has already received the benefit of the Stipulation. Plaintiff should not be able to retain the benefits of the Stipulation by participating in this litigation and asserting a whole new set of class claims while remaining free of the negotiated burdens thereof. *See id.* at 618-19 ("[A] party may not be freed of the burdens of a stipulation while maintaining its benefits.").

9

Likewise, Plaintiff was the only named representative pursuing the New Jersey-based class allegations. None of the other plaintiffs in this action had any connection to New Jersey, and neither the original Complaint nor the First Amended Complaint contained any allegations on behalf of a putative New Jersey class. Plaintiff therefore not only had the opportunity to make specific, well-pleaded factual allegations to support jurisdiction under CAFA with respect to the New Jersey claims in the SAC, but also had a clear need to do so. That Plaintiff failed to adequately plead the elements of this Court's jurisdiction is not itself a reason to ignore the terms of a Stipulation barring further amendment of the SAC.

Indeed, permitting amendment in this case would likely result in manifest injustice towards Defendant. Defendant negotiated the Stipulation permitting the filing of the SAC on clear, unambiguous conditions, including that no further amendments be sought. Allowing yet another amendment of the Complaint at this stage of the litigation would be essentially punishing Defendant for consenting to the filing of the SAC in the first place.

Nor does the subsequent severance and transfer of the New Jersey class claims to this Court warrant a different result. The pleading deficiencies with respect to the Court's jurisdiction over the New Jersey claims would have been present regardless of whether the claims were transferred or remained in the California District Court.

Finally, the Court notes the importance of stipulations and parties' confidence therein to the integrity of the judicial system and the efficient use of judicial resources. *Id.* at 616. The decision to set aside or modify a stipulation should not be made lightly, and the Court concludes that the circumstances of this case do not warrant such a result.

Accordingly, the Court denies Plaintiff's request for leave to amend the SAC, and concludes that dismissal without prejudice is warranted.

### IV.     CONCLUSION

For the reasons set forth above, Defendant's Motion is **GRANTED**. An appropriate order follows.

*/s/ William J. Martini*

**WILLIAM J. MARTINI, U.S.D.J.**

**Date: January 29, 2021**

10